NUMBER 13-14-00436-CV

 COURT OF APPEALS

 THIRTEENTH DISTRICT OF TEXAS

 CORPUS CHRISTI - EDINBURG

GUADALUPE FLORES, ERNESTO FLORES,
BLANCA FLORES, ROSALINDA MAGAÑA,
ARTURO FLORES, MARIA FLORES,
JUAN FLORES, AND FERNANDO FLORES,
AS REPRESENTATIVES OF THE ESTATE
OF ELIA G. FLORES, Appellants,

 v.

MEDLINE INDUSTRIES, INC., Appellee.

 On appeal from the 197th District Court
 of Cameron County, Texas.

 MEMORANDUM OPINION
 Before Justices Garza, Benavides, and Perkes
 Memorandum Opinion by Justice Benavides
 In this appeal, we are asked to determine whether the trial court properly granted
summary judgment in favor of appellee Medline Industries (“Medline”) to void a mediated

settlement agreement that Medline had reached with appellants1 (collectively “Flores”)

related to a lawsuit against it for damages. By two issues, Flores asserts that the trial

court erred in: (1) granting Medline’s motion for summary judgment on the affirmative

defenses of mutual mistake and unilateral mistake; and (2) dismissing their breach of

contract action. By a sole cross-appeal issue, Medline asserts that the trial court erred

in denying its request for attorneys’ fees in this case. We reverse and remand in part

and dismiss in part.

 I. BACKGROUND

 Elia G. Flores purchased a walker from OK Pharmacy in Donna, Texas that was

manufactured by Medline. Shortly after purchasing the walker, Flores alleges that the

walker’s brakes failed and caused Flores to fall to the ground, proximately causing her

personal injuries. Flores sued OK Pharmacy2 and Medline for damages and alleged

causes of action for products liability, strict liability, and negligence.

 Medline filed a pre-trial motion for summary judgment against all of Flores’

products liability claims and causes of action against it, which was heard on April 6, 2014.

According to the record, the trial court signed an order granting Medline’s motion for

summary judgment later that same day and filed it with the district clerk on April 11, 2014.

Mediation was held on April 16, 2014. Affidavits from both parties state that neither party

had actual notice that the motion for summary judgment was granted until after all the

 1 The full list of appellants is: Guadalupe Flores, Ernesto Flores, Blanca Flores, Rosalinda Magaña,
Arturo Flores, Maria Flores, Juan Flores, and Fernando Flores, as representatives of the estate of Elia G.
Flores.

 2 OK Pharmacy is not a party to this appeal.

 2
parties attended the mediation on April 16, 2014. At the mediation, the parties reached

the following agreement (“the agreement”):

 SETTLEMENT AGREEMENT

 The parties hereto agree that this lawsuit and all related claims and
 controversies between them are hereby settled in accordance with the
 following terms of this Settlement Agreement.

 1. The parties acknowledge that bona fide disputes and
 controversies exist between them, both as to liability and the amount
 thereof, if any, and by reason of such disputes and controversies they desire
 to compromise and settle all claims and causes of action of any kind
 whatsoever which the parties have or may have arising out of the
 transaction or occurrence which is subject to this litigation. It is further
 understood and agreed that this is a compromise of a disputed claim, and
 nothing contained herein shall be construed as an admission of liability by
 any party, all such liability being expressly denied.

 2. Each signatory hereto hereby warrants and represents that:

 a. such person has authority to bind the party or parties
 for whom such person acts.

 b. The claims, suits, rights, and/or interests which are the
 subject matter hereto are owned by the party asserting same, have
 not been assigned, transferred or sold, and are free of any
 encumbrance.

 3. The parties will execute and file an Agreed Order dismissing
 all claims in the above-styled and numbered case with prejudice. Each
 party will bear its own costs.

 4. Defendant, OK Pharmacy, Inc. . . . agrees to pay [Flores] the
 sum of $75,000.00 as full and final settlement for any and all claims that she
 may have against this Defendant.

 Defendant, [Medline] agrees to pay [Flores] the sum of $50,000.00 as full
 and final settlement for any and all claims that she may have against this
 Defendant.

 [Flores] and their attorney agree to satisfy any and all liens relating to the
 underlying accident that may exist from the proceeds of this settlement.
 [Flores’] attorney agrees to provide a final lien and/or conditional payment

 3
letter from Medicare and Medicaid of the lien amounts so that Defendants’
may issue payment directly to the lien holder.

 5. Except for the agreements set forth herein, the parties hereby
agree to release, discharge, and forever hold the other harmless from any
and all claims, demand, or suits, known or unknown, fixed or contingent,
liquidated or unliquidated, whether or not asserted in the above case, as of
this date, arising from or related to the events and transactions which are
the subject matter of this cause. This mutual release runs to the benefit of
all attorneys, agents, employees, officers, directors, shareholders, partners,
heirs, assigns, and legal representatives of the parties hereto.

 6. Counsel for Defendants shall deliver drafts of any further
documents and settlement checks/drafts to be executed in connection with
this settlement to counsel for the other parties hereto within 21 days of being
provided with the final lien letter from Medicare and Medicaid. The parties
and their counsel agree to cooperate with each other in drafting and
execution of such additional documents as are reasonably requested or
required to implement the provisions and spirit of this Settlement
Agreement, but notwithstanding such additional documents the parties
confirm that this is a written settlement agreement as contemplated by
Section 154.071 of the Texas Civil Practice and Remedies Code. (emphasis
omitted).

 7. This Settlement Agreement is made and performable in
Cameron County, Texas, and shall be construed in accordance with the
laws of the State of Texas.

 8. If one or more disputes arise with regard to the interpretation
and/or performance of this Agreement or any of its provisions, the parties
agree to attempt to resolve same with Carlos H. Ochoa, the mediator, who
facilitated this settlement. If litigation is brought to construe or enforce this
Agreement, the prevailing party shall be entitled to recover attorney’s fees,
as well as court costs and expenses, including the cost of the mediation.

 9. Although the mediator has provided a basic outline of this
Settlement Agreement to the parties’ counsel as a courtesy to facilitate the
final resolution of this dispute, the parties and their counsel have thoroughly
reviewed such outline and have, where necessary, modified it to conform to
the requirements of their agreement. All signatories to this Settlement
Agreement hereby release the Mediator from any and all responsibility
arising from the drafting of this Settlement Agreement, and by signing this
Settlement Agreement acknowledge that they, or their attorneys, have been
advised by the mediator in writing that this Settlement Agreement should be
independently reviewed by counsel before executing the Agreement.

 4
 On May 2, 2014, Medline filed a motion to rescind the settlement agreement on

the ground of mutual mistake of fact that “it was still a party to the lawsuit, when it was

not” by virtue of the trial court’s April 9, 2014 granting of its motion for summary judgment,

and in the alternative, on the ground of unilateral mistake. Medline attached an affidavit

from its counsel stating that he had no actual knowledge of the trial court’s granting of

Medline’s motion for summary judgment prior to attending the April 16, 2014 mediation,

and had he known about the ruling, he “would have excused [himself] from the mediation”

and “would not have executed any agreement that contained terms where [Medline]

would pay any sum of money.” Medline also attached the affidavit from another one of

its attorneys stating that he had called the trial court clerk on April 11, 2014 and April 14,

2014 and had been told that an order had not been entered. On April 16, 2014, the

attorney’s paralegal attempted to contact the clerk’s office, but did not reach anyone at

the clerk’s office.

 On May 8, 2014, Flores filed a second amended petition adding a cause of action

for breach of contract against Medline regarding Medline’s attempts to rescind the

mediated settlement agreement. On May 12, 2014, Flores filed a motion to enforce the

settlement and response to Medline’s motion to rescind disputing Medline’s assertions of

mutual and/or unilateral mistake. On May 14, 2014, the trial court granted Medline’s

motion to rescind and ordered all pending claims by Flores against Medline severed.

 On May 19, 2014, Medline filed a consolidated petition for declaratory judgment

and traditional motion for summary judgment that asked the trial court to declare the

parties’ settlement agreement void because of mutual mistake, or in the alternative,

 5
because of unilateral mistake. Alternatively, Medline urged a motion for summary

judgment to defeat Flores’s breach of contract action as a matter of law through its

affirmative defenses of mutual and/or unilateral mistake.

 In its response on June 11, 2014, Flores again refuted Medline’s affirmative

defense of mutual and/or unilateral mistake and used the mediated settlement agreement

as evidence to create a fact issue as to its affirmative defenses. Additionally, Flores filed

a motion to reconsider the trial court’s implicit denial of her motion to enforce the

settlement. On June 20, 2014, the original trial judge in this case voluntarily recused

herself and a new trial court judge was appointed in her place.

 On July 17, 2014, the trial court held a hearing on Medline’s petition for declaratory

judgment, motion for summary judgment, and Flores’s motion for reconsideration of her

motion to enforce settlement. Following the hearing, the trial court: (1) denied Flores’s

motion for reconsideration; (2) granted Medline’s motion for summary judgment based

upon mutual and/or unilateral mistake of fact and voided the April 16, 2014 mediated

settlement agreement; and (3) dismissed Flores’s breach of contract action with

prejudice.3 This appeal followed.

 II. SUMMARY JUDGMENT

 By their first issue, Flores asserts that the trial court erred in granting Medline’s

summary judgment as to its affirmative defenses of mutual mistake and unilateral

mistake.

 A. Standard of Review

 3 The order further states that all other relief not granted is denied.

 6
 We review summary judgments de novo. Merriman v. XTO Energy, Inc., 407

S.W.3d 244, 248 (Tex. 2013); Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman &

Gordon, P.C., 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). We

take as true all evidence favorable to the non-movant and indulge every reasonable

inference and resolve any doubts in the non-movant's favor. Joe v. Two Thirty Nine Joint

Venture, 145 S.W.3d 150, 157 (Tex. 2004).

 In advancing a traditional motion for summary judgment, the movant has the

burden to show there is no genuine issue of material fact, and it is entitled to judgment as

a matter of law on the issues expressly presented to the trial court by written motion,

answer, or other response. TEX. R. CIV. P. 166a(c). When a party moves for summary

judgment based upon an affirmative defense, as here, the movant must establish each

element of its defense as a matter of law. Johnson & Johnson Med., Inc. v. Sanchez,

924 S.W.2d 925, 927 (Tex. 1996). Unless the movant conclusively establishes the

affirmative defense, the non-movant plaintiff has no burden in response to a motion for

summary judgment filed on the basis of an affirmative defense. Gonzalez v. City of

Harlingen, 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied) (citing

Torres v. Western Cas. & Surety Co., 457 S.W.2d 50, 52 (Tex. 1970); see also David

Hittner & Lynne Liberato, Summary Judgments in Texas: State and Federal Practice, 52

HOUS. L. REV. 777, 862 (2015) (“Unless the movant conclusively establishes the

affirmative defense, the nonmovant-plaintiff has no burden to present summary judgment

evidence to the contrary.”). If the defendant meets this burden, the plaintiff must then

produce evidence raising a genuine issue of material fact to avoid summary judgment on

 7
the affirmative defense. Vu v. ExxonMobil Corp., 98 S.W.3d 318, 320 (Tex. App.—

Houston [1st Dist.] 2003, pet. denied).

B. Discussion

 Flores argues that Medline did not produce conclusive evidence to support the trial

court’s granting of its summary judgment on the grounds of mutual and unilateral mistake

to defeat their cause of action for breach of contract.

 To prevail on a breach of contract claim, the plaintiff must prove (1) a valid contract;

(2) the plaintiff performed or tendered performance; (3) the defendant breached the

contract; and (4) the plaintiff was damaged as a result of the breach. Keszler v. Mem’l

Med. Ctr. of E. Tex., 105 S.W.3d 122, 128 (Tex. App.—Corpus Christi 2003, no pet.). In

order to form a valid and binding contract, there must be (1) an offer; (2) acceptance in

strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party’s

consent to the terms; and (5) execution and delivery of the contract with the intent that it

be mutual and binding. Critchfield v. Smith, 151 S.W.3d 225, 233 (Tex. App.—Tyler

2004, pet. denied). Lastly, consideration is a fundamental element of a valid enforceable

contract. Id. With these principles in mind, we turn now to Medline’s affirmative

defenses.

 1. Mutual Mistake

 Mutual mistake is an affirmative defense which must be pleaded and proved.

Tobbon v. State Farm Mut. Auto. Ins. Co., 616 S.W.2d 243, 245 (Tex. Civ. App.—San

Antonio, 1981, writ ref’d n.r.e). Pursuant to the doctrine of mutual mistake, when parties

to an agreement have contracted under a misconception or ignorance of a material fact,

 8
the agreement will be avoided. Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990).

Mutual mistake of fact occurs when both parties to a transaction have a belief that a

present fact exists, which is material to the transaction, which does not actually exist.

A.L.G. Enters. v. Huffman, 660 S.W.2d 603, 606 (Tex. App.—Corpus Christi 1983), aff’d

as reformed, 672 S.W.2d 230 (Tex. 1984) (per curiam). A mutual mistake is one

common to both or all parties, wherein each labors under the same misconception

respecting a material fact or the terms of the agreement. Id. at 606. When mutual

mistake is alleged, the task of the court is not to interpret the language contained in the

release, but to determine whether or not the release itself is valid. Williams, 789 S.W.2d

at 265.

 For a party to prove mutual mistake, the evidence must show that both parties had

the same misunderstanding of the same material fact. Huffman, 660 S.W.2d at 606. In

order for a party to be relieved on the ground of mutual mistake of fact, the mistake must

deal with a material part of the contract. Id. The mistake must involve the subject matter

of the contract and the substance thereof. Id. It may not relate merely to a collateral

matter. Id.

 Medline argues that all of the parties were under the “common misconception that

[Flores] still had active causes of action pending against Medline,” which served as a

material fact and as the basis for the settlement. To support this contention, Medline

cites the settlement agreement, which states:

 The parties acknowledge that bona fide disputes and controversies exist
 between them, both as to liability and the amount thereof, if any, and by
 reason of such disputes and controversies they desire to compromise and
 settle all claims and causes of action of any kind whatsoever which the
 parties have or may have arising out of the transaction or occurrence which

 9
 is the subject of this litigation.

 First, we note that the basis for the settlement agreement does not specifically

mention or limit, as Medline asserts, that Flores had “active causes of action pending.”

Rather, the settlement agreement states that the parties seek to settle “all claims and

causes of action of any kind whatsoever which the parties have or may have arising out

of the transaction or occurrence which is the subject of this litigation.” Flores’s attorney,

Jorge Gomez, testified by affidavit in its Motion to Enforce Settlement and Response to

Medline’s Motion to Rescind that although he had no knowledge of the trial court’s action

prior to the mediation, he believed that the trial court would grant Medline’s motion for

summary judgment and advised his clients to “settle for less” with Medline on that belief

to “end[] the litigation” as a bargain for “closure and peace from any further litigation in

this case,” including the possibility to file a “motion for re-hearing, motion for new trial,

and/or notice of appeal” related to Medline’s motion for summary judgment. We hold

that a reasonable and fair-minded person could conclude that the use of “all claims” in

the settlement agreement could have included, as Flores asserted, Flores’s available

post-judgment remedies such as a motion for reconsideration or notice of appeal, even if

the parties had knowledge of the trial court’s granting of Medline’s motion for summary

judgment.

 Second, Medline’s counsel Jason Wagner’s affidavit statements do not rise to the

level of conclusive evidence to prove mutual mistake. Wagner testified by affidavit that

he prepared a “Pre-Mediation Report” for Medline and arranged a telephone conference

with Medline on April 15, 2014 “to coordinate how we would approach settlement

negotiations.” Wagner further testified that had he known “at any time between . . . April

 10
9, 2014 [the day of the summary judgment hearing] and . . . April 15, 2014 [the day before

the mediation] that [the trial court] had granted the Motion for Summary Judgment, I would

have advised my client not to attend mediation and not to make any offer of settlement.”

Wagner also stated that, had he learned of the trial court’s ruling on Medline’s motion for

summary judgment at the mediation, he “would have excused [himself] from the mediation

and certainly would not have executed any agreement that contained terms where [his]

client would pay any sum of money.”

 Rule 166a(c) permits the granting of a summary judgment on the basis of

uncontroverted testimonial evidence of an interested witness if that evidence is “clear,

positive and direct, otherwise credible and free from contradictions and inconsistencies,

and could have been readily controverted.” TEX. R. CIV. P. 166a(c). The term “could

have been readily controverted” means that the testimony at issue is of a nature which

can be effectively countered by opposing evidence.” Casso v. Brand, 776 S.W.2d 551,

558 (Tex. 1989). Furthermore, “if the credibility of the affiant or deponent is likely to be

a dispositive factor in the resolution of the case, then summary judgment is inappropriate.”

Id. Here, Wagner’s interested testimony speaks to internal settlement discussions and

thought processes that Wagner had with his client, to which Flores was not privy. Thus,

Wagner’s statements regarding what he would have done had he known about the trial

court’s granting of Medline’s motion for summary judgment cannot be readily controverted

by Flores because such knowledge of facts were outside of Flores’s control. See id.

At most, these statements provide some evidence to support Medline’s affirmative

defense of mutual mistake, but we cannot conclude that these statements rise to the level

of conclusive evidence to sustain Medline’s motion for summary judgment because, even

 11
if the statements are undisputed, Wagner’s testimony has more than one logical

inference: (1) it is true, or (2) it is not—that is, Medline’s affirmative defense of mutual

mistake is dispositive based on Wagner’s credibility, which makes summary judgment

inappropriate. See City of Keller v. Wilson, 168 S.W.3d 802, 815 (Tex. 2005) (holding

that conclusive evidence must have “only one logical inference”); Casso, 776 S.W.2d at

558.

 When mutual mistake is alleged, the task of the court is not to interpret the

language contained in the release, but to determine whether or not the release itself is

valid. Williams, 789 S.W.2d at 265. Stated another way, if it can be established that a

release sets out a bargain that was never made, it will be invalidated. Id. If the objective

manifestation of the parties’ intent—i.e., their conduct—indicates what was contemplated,

the courts cannot provide intent for them. Id. The settlement agreement in this case

states the parties’ intent is to “compromise and settle all claims and causes of action of

any kind whatsoever which the parties have or may have arising out of the transaction or

occurrence which is the subject of this litigation,” including the possibility that Medline

may prevail on its motion for summary judgment. What the parties meant by this

language in the settlement agreement, however, cannot be conclusively established by

the record before us.

 Therefore, after evaluating the record in this case at the time of Medline’s motion

for summary judgment hearing, we conclude that Medline failed to conclusively establish

its defense of mutual mistake as a matter of law because genuine issues of material fact

exist as to what bargain was made between the parties. See Williams, 789 S.W.2d at

265. A genuine issue of material fact exists as to whether Medline would have settled,

 12
regardless of the outcome of its pending motion for summary judgment, because Flores

still could have continued her litigation against Medline, even if the parties had known

about the trial court’s ruling on the motion for summary judgment, by pursuing a motion

for rehearing, motion for new trial, or notice of appeal. Additionally, Flores presented

evidence that the parties agreed to effectively end all legal proceedings, to “end[] the

litigation” as a bargain for “closure and peace from any further litigation in this case,”

including Flores’s rights to challenge the trial court’s ruling on Medline’s motion for

summary judgment—regardless of the outcome of the ruling. As a result, the trial court

erred in granting Medline’s summary judgment on Medline’s affirmative defense of mutual

mistake.

 2. Unilateral Mistake

 We next turn to Medline’s affirmative defense of unilateral mistake. A unilateral

mistake by a party to the agreement may not constitute grounds for relief when the

mistake was not known to or induced by the other party. Welkener v. Welkener, 71

S.W.3d 364, 366 (Tex. App.—Corpus Christi 2001, no pet.) (citing Johnson v. Snell, 504

S.W.2d 397, 399 (Tex. 1973)). However, equitable relief will be granted for a party

against a unilateral mistake, or remedial mistake, when a party shows: (1) the mistake is

of so great a consequence that to enforce the contract as made would be unconscionable;

(2) the mistake relates to a material feature of the contract; (3) the mistake must have

been made regardless of the exercise of ordinary care; and (4) the parties can be placed

in status quo in the equity sense, i.e., rescission must not result in prejudice to the other

party except for the loss of his bargain. See id. (citing James T. Taylor & Son, Inc. v.

Arlington I.S.D., 160 Tex. 617, 335 S.W.2d 371, 374 (1960)).

 13
 With regard to the first element of unilateral mistake, Medline must show by

conclusive evidence that the mistake of not knowing about the trial court’s granting of its

summary judgment “is of so great a consequence that to enforce the contract as made

would be unconscionable.” Id. Unconscionability may be either procedural or

substantive in nature and is to be determined in light of a variety of factors. Generally,

procedural unconscionability refers to circumstances surrounding the making of contract,

while substantive unconscionablility refers to a contract that is “grossly one-sided.” See

In re Poly-Am., L.P., 262 S.W.3d 337, 338 (Tex. 2008) (orig. proceeding); In re Palm

Harbor Homes, Inc., 195 S.W.3d 672, 678–79 (Tex. 2006) (orig. proceeding).

 The determination that a contract or term is or is not unconscionable is made in

the light of its setting, purpose, and effect. Relevant factors include weaknesses in the

contracting process like those involved in more specific rules as to contractual capacity,

fraud, and other invalidating causes; the policy also overlaps with rules which render

particular bargains or terms unenforceable on grounds of public policy. In re Poly-Am.,

262 S.W.3d at 348–49 (citing RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. A

(1979)). In support of the first element to establish unilateral mistake, Medline

specifically argues substantive unconscionability and asserts that this settlement is

“entirely one sided and unfair” because Medline would not have agreed to settle if it had

known that Flores did not have an “active cause of action” against it. We disagree that

Medline conclusively establishes this element as a matter of law.

 This agreement was reached in a mediated setting that is provided for and

encouraged under the civil practice and remedies code. See TEX. CIV. PRAC. & REM.

CODE ANN. § 154.023 (West, Westlaw through 2015 R.S.) (“Mediation is a forum in which

 14
an impartial person, the mediator, facilitates communication between parties to promote

reconciliation, settlement, or understanding among them.”); see also id. § 154.002 (West,

Westlaw through 2015 R.S.) (“It is the policy of this state to encourage the peaceable

resolution of disputes . . . including the mediation of issues involving conservatorship,

possession, and support of children, and the early settlement of pending litigation through

voluntary settlement procedures.”). The record also shows that both parties were

represented by competent counsel at the mediation, and that both Medline’s and Flores’s

respective counsel were aware of the pending motion for summary judgment ruling.

Additionally, the settlement agreement states that “the parties and their counsel have

thoroughly reviewed” the agreement prepared by the mediator, “and have, where

necessary, modified it to conform to the requirements of their agreement.” Flores’s

counsel’s affidavit states that the anticipated ruling on Medline’s motion for summary

judgment was also used as a bargaining tool for Medline during the mediation. Flores

also argues, without dispute, that Medline had full negotiation power at the mediation to

place contingencies or conditions on the settlement agreement with regard to its pending

motion for summary judgment. Based on these facts, Medline cannot conclusively show

that to enforce the agreement as written would be unconscionable.

 Even assuming that Medline conclusively established the first element of unilateral

mistake, Medline cannot conclusively establish the affirmative defense’s second element

that the mistake relates to a material feature of the contract. Medline argues that

because the trial court granted its summary judgment, the intent of the agreement was to

compromise a “bona fide dispute” between the parties, but none existed as a result of the

trial court’s unknown ruling. As we explained in Part II(B)(1) of this opinion, a question

 15
of fact exists as to what the parties intended with regard to entering the settlement

agreement, and whether that intention contemplated the possibility that Flores could have

challenged the trial court’s summary judgment ruling through a motion for rehearing,

motion for new trial, or notice of appeal. Therefore, we conclude that Medline does not

conclusively establish this second element as a matter of law.

 Because we hold that Medline failed to conclusively prove the first two elements

of unilateral mistake, the trial court erred in granting summary judgment in Medline’s favor

on this affirmative defense.

C. Conclusion

 In conclusion, the trial court erred in granting summary judgment on either of

Medline’s affirmative defenses of mutual mistake and unilateral mistake. We hold that

Flores created fact issues with regard to both affirmative defenses, and that Medline failed

to conclusively establish its affirmative defenses as a matter of law. Therefore, the trial

court erred in dismissing with prejudice Flores’s breach of contract cause of action.

Flores’s first issue is sustained.

 III. DISMISSAL OF FLORES’ BREACH OF CONTRACT ACTION

 By their second issue, Flores asserts that the trial court erred by dismissing their

breach of contract action and asks this Court to render judgment in their favor. Medline

argues, however, that Flores is impermissibly arguing the merits of their breach of

contract action before us on appeal and are seeking a judgment as a matter of law in their

favor. After reviewing the substantive arguments made by Flores and the relief that they

are requesting in their briefing to this Court, we agree with Medline.

 As a prerequisite to presenting a complaint for appellate review, the record must

 16
show that the complaint was made to the trial court by a timely request, objection, or

motion that states the grounds for the ruling that the party seeks and that the trial court

expressly or implicitly ruled on the request, objection, or motion. See TEX. R. APP. P.

33.1(a). Here, Flores did not file a motion for summary judgment. Accordingly, we

decline to address this issue because it is unpreserved for our review.

 To the extent that Flores asks us to review the trial court’s denial of their motion to

enforce the settlement agreement, Part II of this opinion controls the disposition of that

argument. A written settlement agreement may be enforced though one party withdraws

consent before judgment is rendered on the agreement. Mantas v. Fifth Court of

Appeals, 925 S.W.2d 656, 658 (Tex. 1996). Where consent is lacking, however, a court

may not render an agreed judgment on the settlement agreement, but rather may enforce

it only as a written contract. Id. Thus, the party seeking enforcement must pursue a

separate breach-of-contract claim, which is subject to the normal rules of pleading and

proof. Here, because Medline revoked its consent to the settlement agreement, Flores

is properly attempting to enforce the agreement through their breach of contract action,

which is revived in light of our decision today. Flores’s second issue is overruled.

 IV. MEDLINE’S REQUEST FOR ATTORNEY’S FEES

 Lastly, Medline raises an issue on cross-appeal regarding the trial court’s denial of

its request for attorneys’ fees in this case under the Uniform Declaratory Judgments Act.

See TEX. CIV. PRAC. & REM. CODE § 37.009 (West, Westlaw through 2015 R.S.).

 Our review of the record indicates that Medline failed to file a notice of appeal.

Although the filing of a notice of appeal by any party invokes this Court’s jurisdiction over

all parties to the trial court’s judgment, see TEX. R. APP. P. 25.1(b), a party who seeks to

 17
alter the trial court’s judgment, such as Medline, must file a notice of appeal. See id. R.

25.1(c). We may not grant a party who does not file a notice of appeal more favorable

relief than did the trial court, except for just cause. Id. Because Medline does not argue

just cause to dispense with Rule 25.1—nor do we find any—we dismiss Medline’s cross-

appeal.

 V. CONCLUSION

 We reverse the trial court’s granting of summary judgment regarding the mutual

and unilateral mistake affirmative defenses raised by Medline. We reverse the trial

court’s order dismissing with prejudice Flores’s breach of contract action, and we remand

the cause for further proceedings consistent with this opinion. Finally, we dismiss

Medline’s cross-appeal seeking attorneys’ fees.

 GINA M. BENAVIDES,
 Justice

Delivered and filed the
17th day of December, 2015.

 18